## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT COOPER, # 209556 | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. JFM-14-629 |
| | * | |
| PEGGY MALHLER, RNP, | * | |
| KIM MARTIN, RN, | * | |
| ALAN WILT, RN, | * | |
| AVA JOUBERT, | * | |
| JANICE GILMORE, MEDICAL | * | |
| ADMINISTRATOR, | * | |
| COLIN OTTEY, MD, | * | |
| WEXFORD HEALTH SOURCES, | * | |
| LEA WILEY, NURSE LPN, | * | |
| DENNIS MARTIN, RN, | * | |
| QUINTA LUM, PA, | * | |
| Defendants. | ****** | |

### MEMORANDUM

Robert Cooper is an inmate in the custody of the Maryland Department of Correction. He is suing defendants pursuant to 42 U.S.C. §1983, raising claims they provided inadequate medical treatment to him after he was involved in a use of force incident at Western Correctional Institution in Cumberland, Maryland, on October 22, 2013.

This matter is before the court on Defendants Wexford Health Sources, Inc. ("Wexford"), Peggy Mahler, P.A., Quinta Lum, P.A., Dennis Martin, R.N., Lee Wiley, LPN, Kim Martin, R.N., Alan Wilt, R.N., Ava Joubert, M.D., Colin Ottey, M.D., and Janice Gilmore's (collectively "Medical Defendants") Motion for Summary Judgment. ECF 27. Cooper, who is self-represented, filed an opposition (ECF 28), to which counsel filed a reply. ECF 31. The case isready for disposition and a hearing is unnecessary. Local Rule 105.6 (D. Md. 2014).

# BACKGROUND

## I.    Procedural History

Cooper filed the complaint on March 5, 2014, in the form of a declaration. ECF 1 at 17. Cooper claims the Medical Defendants failed to provide adequate care for physical and emotional injuries he suffered as a result of the use of force incident. Cooper requests an order for injunctive relief requiring Wexford to address his physical and psychological injuries; and seeks compensatory damages of $75,000 against each defendant for breach of duty, intentional infliction of mental and emotional distress, negligent infliction of mental and emotional distress, gross negligence, medical malpractice and negligence, punitive damages of $150,000 against each defendant for breach of duty, intentional infliction of mental and emotional distress, negligent infliction of mental and emotional distress, medical malpractice and negligence, and "future damages" of $350,000 against each defendant for breach of duty, intentional infliction of mental and emotional distress, negligent infliction of mental and emotional distress, gross negligence, medical malpractice, and negligence. ECF 1, ¶¶ 20-22. On September 9, 2015, the court dismissed Cooper's medical malpractice and negligence claims. ECF 25.

The complaint named, in addition to defendants listed above, correctional officers Sergeant Crumpac, Greg Hershberger, Brad Brinegar, Brett Wilburn, and William Logsdon (hereinafter, the "Correctional Defendants"). On November 19, 2014, counsel for the Correctional Defendants filed a motion to consolidate the claims against them in Cooper's earlier filed case, *Cooper v. Brinegar, et al.* Civil Action No. JFM-13-3692 (D. Md.).[1] The court

---

[1] In addition to the case *sub judice*, Cooper filed two other cases which included some of the same claims presented here in addition to others arising out of the October 22, 2014 use of force incident. *See Cooper v. Brinegar, et al.* Civil Action No. JFM-13-3692 (D. Md.) (raising claims including use of excessive force by correctional officers, unconstitutional conditions of confinement, and retaliation); *Cooper v. Sowers, et al.*, Civil Action No. JFM-13-3872 (D. Md.) (raising claims including inadequate mental

granted the motion to promote judicial economy, and the claims against Sergeant Crumpac, Greg Hershberger, Brad Brinegar, Brett Wilburn, and William Logdon were consolidated with *Cooper v. Brinegar*. ECF 19, 20, 23.

On September 22, 2014, the Medical Defendants filed a Motion to Dismiss. ECF 14. On October 8, 2014, Cooper filed an opposition. ECF 16.

On September 9, 2015, the court granted the Medical Defendants' motion to dismiss in part as to Cooper's medical malpractice and negligence claims and denied it as to the rest of his claims. ECF 25. The court determined Cooper's remaining claims, although unartfully stated, suggested the Medical Defendants acted with deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment to the Constitution. ECF 24. Mindful that pro se pleadings must be liberally construed and Cooper presented his allegations in the form of a declaration, the court deemed dismissal of the complaint in its entirety inappropriate. The court granted the Medical Defendants thirty days to file a dispositive motion with verified exhibits and affidavits addressing Cooper's claims of deliberate indifference to his serious medical needs. *Id.*

The Medical Defendants filed the motion for summary judgment with declarations and verified exhibits on October 8, 2015. (ECF 26). Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), Cooper was notified that he was entitled to file an opposition response and supporting materials. ECF 27. Cooper filed a response on November 18, 2015, stating he "does not agree with the defendants' factual allegations to the complaint." ECF 28 at 5. Cooper did not file any supporting documentation. On November 18, 2015, the Medical Defendants submitted a reply. ECF 31.

---

health treatment). Cooper's claims in those cases were either dismissed or summary granted in favor of defendants.

## II.    Cooper's Allegations

On summary judgment, the court must consider the facts in the light most favorable to Cooper as the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

It is undisputed that Cooper was taken to the medical department on October 22, 2013, after a use of force incident which involved administration of pepper spray.   There, Cooper was examined by defendant Kim Martin, R.N. ("Martin").[2]

Cooper asserts corrections officers permitted Martin to address Cooper's exposure to pepper spray only, not his physical injuries. (ECF 1, ¶1).[3] Cooper wanted x-rays and asked Martin to refer him to an eye doctor, a dentist, and a psychologist. *Id.* ¶2.  Cooper claims he informed "Nurse Jennifer"[4] that he was assaulted by correctional officers, and she did not give him his medications. *Id.* ¶3.

---

[2]   The medical record reflects Cooper was examined by Nurse Dennis Martin, not Nurse Kim Martin. ECF 26-4 at 2-3.

[3]   Cooper claimed that unnamed correctional officers permitted Martin to treat him only for pepper spray exposure and not his physical injuries was considered in *Cooper v Brinegar, et al.*, Civil Action JFM-13-3692. ECF 33¶1, ECF 34 at 26. Martin denied these allegations in his declaration:

> These allegations are untrue.  I do not allow correctional officers to determine how I conduct a medical examination and I do not allow correctional officers to tell me what to write in medical records.  When I met with Plaintiff on October 22, 2013, I examined him and I noted that he had a minor open area/abrasion at the top of his head. He had no bleeding or swelling, he denied loss of consciousness and the reported gait was in normal limits.  No other injuries were noted or reported. The contents of the October 22, 2013 medical record accurately and complete describes [sic] Plaintiff's condition.

*Id.* at ECF 39-3. Additionally, defendants have filed a verified copy of the medical report Martin completed during Cooper's medical evaluation on October 22, 2013. ECF 39-4. The medical report, written contemporaneously with the evaluation, was consistent with Martin's declaration. Martin recommended a shower and a change of clothes to address Cooper's exposure to pepper spray. *Id.* Summary judgment was entered in favor of defendants as to this claim.

[4]   Wexford Health Sources, Inc., the contractor of medical services at the facility indicates it was unable to identify any individual named "Nurse Jennifer."  ECF 14, n. 2. Service has not been obtained on "Nurse Jennifer" or "John/Jane Doe, Director, R.N" and both were dismissed from this action. ECF 25.

On October 23, 2013, Cooper complained to defendant Quinta Lum, P.A., that no one addressed his physical injuries or medical issues after the incident.  Lum told him that she called him to the treatment room to inform him that she was renewing his mechanical soft diet, and could not provide treatment unless he first submitted a sick call slip. *Id.* ¶4.  Cooper explained he was in a "strip cell" and not permitted to have paper or medications stored there. ECF 28 at 2. Cooper asked her about his left eye injury. *Id.* ¶4.  Lum responded that she could see the eye was infected and would prescribe medication for it. *Id.*

On October 24, 2013, Cooper complained to Martin that his eye had worsened. Cooper indicated he had not received his prescribed blood pressure medication, x-rays, or eye doctor, dentist, and psychologist consultations. *Id.*  Martin responded he had submitted referrals for eye, dental, and psychology consultations, as well as an x-ray request for Cooper. *Id.* ¶ 5.  Martin advised Cooper to bring his blood pressure medication concern to the attention of Nurse Wiley. *Id.*

On October 24, 2013, Cooper told defendant Lea Wiley ("Wiley") that he was assaulted by security staff and he had not received his medications.  Wiley told him security staff had packed the medication, and said, "I will see what I can do." *Id.* ¶6.[5]

On October 24, 2013, Cooper informed defendant Peggy Mahler, P.A. that he was assaulted by correctional officers and no one addressed his physical and psychological injuries. Mahler stated she would refer Cooper to an eye doctor and to the psychology department and would order an x-ray for his rib. *Id.* ¶7.

---

[5] Cooper was in a contingency cell. ECF 26-4 at 7. The "packing up" of his medication was considered in *Cooper v. Brinegar, et al.*, JFM-13-3692. ECF 1,  ECF 6, ECF 34 at 23.

On November 25, 2013, Cooper informed the Director of Inmate Health Services that he was assaulted by security staff and that vision in his left eye was blurry and it was infected at one time.   He also stated that he needed to see an eye doctor, but no one responded. *Id.* ¶11.

On December 20, 2013 and January 9, 2014, Cooper informed Martin that he had been assaulted and pepper sprayed in both eyes during the October 22, 2013 incident.  He told Martin his left eye had become infected and his vision was blurry since then.  Nurse Martin told Cooper he would speak to the scheduling nurse to place Cooper on the list to see an eye doctor.  *Id.* ¶14.

Between November 13, 2013 and December 27, 2013, Cooper told inmate Nurse Alan Wilt that he had been assaulted and pepper sprayed; was suffering from an infection and blurry vision in his left eye; and needed to see an eye doctor.  Wilt responded that he would e-mail the scheduling nurse and submit a request for an eye consultation for Cooper.  *Id.* ¶15.

Between November 2013 and December 30, 2013, Cooper told Ava Joubert, M.D., that he had been assaulted and pepper sprayed and was suffering from an infection and blurry vision and needed to see an eye doctor. *Id.* ¶16.   Dr. Joubert indicated she would submit an eye consultation request for Cooper. *Id.*

Between October 23, 2013 and February 7, 2014, the scheduling nurse, Janice Gilmore, and Dr. Colin Ottey were contacted by e-mail, sick call slip and/or letter concerning Cooper's need to see an eye doctor and a psychologist.

On May 5, 2014, Cooper was seen by an optician ("eye glass doctor") and referred to an ophthalmologist.  ECF 7.

On May 19, 2014, Cooper was examined by an ophthalmologist.  *Id.*

On July 20, 2014, Cooper received a memorandum from Wexford which stated his eyeglasses would not be repaired or replaced and he was ineligible for an eye exam until March of 2016. *Id.*

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists if the opposing party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof. *Celotex Corp.*, 477 U.S. 317, 322–23 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Fourth Circuit has emphasized the "affirmative obligation of the trial judge to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp.*, 477 U.S. at 323–24).

The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the party opposing summary judgment. *Scott, 550* U.S. at 378, *Iko*, 535 F.3d at 230. The party opposing summary judgment may not rest upon the mere allegations or denials of its pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

Medical Defendants assert they are entitled to summary judgment in their favor on several grounds: 1) Wexford is entitled to summary judgment because the doctrine of respondeat superior is inapplicable to claims filed pursuant to 42 U.S.C. §1983; 2) the record does not support a claim of deliberate indifference to his serious medical needs: 3) the record does not support claims of intentional infliction of emotional distress or gross negligence; and 4) Maryland law does not support a claim for negligent infliction of emotional distress. [6]

### A.  Cooper's Medical Records

Cooper's medical records show that on October 22, 2013 after he was exposed to pepper spray, he complained to Nurse Martin his eyes were burning. Martin's examination notes reflect Cooper had a minor abrasion and open area on the top of his head, without any bleeding. No swelling was noted or reported and Cooper was able to bear full weight on his extremities. It was noted that Cooper was going to shower and change his clothes.  ECF-26-4 at 2.

The following day, October 23, 2013, Cooper was provided antibiotic eye drops by Quinta Lum.  He complained of burning, drainage, and redness in his left eye.  *Id.* at 4.

On October 24, 2013, nurse practitioner Peggy Mahler examined Cooper for his complaint of eye discomfort.  Mahler noted Cooper had been prescribed antibiotic eye drops the previous day and renewed his order for Motrin 600 mg.  *Id.* at 7.  The record also shows Martin ordered, and Cooper received, an x-ray of his right rib to help diagnose his complaints of rib pain.  The x-ray revealed no evidence of acute fracture, dislocation or subluxation.  *Id.* at 6. Cooper states in his opposition that he "disagrees" that he was provided an x-ray at this time.

---

[6] Because the court concludes the record does not support an Eighth Amendment claim, supplemental jurisdiction under 28 U.S.C. §1367 will not be exercised over Cooper's torts and negligence claims (ECF 1 at 15).  His state law claims will be dismissed without prejudice.

ECF 28 at 2-3.  Apart from the generally stated disagreement, however, he provides no verified documentation to refute the medical record.

On October 28, 2016, Nurse James Wilt saw Cooper during segregation rounds.  Cooper complained the antibiotic eye drops he was using three times a day were making his vision blurry and causing burning.  Wilt instructed Cooper to reduce the amount to one (1) drop per day. *Id.* at 10.

On January 21, 2014, Mahler examined Cooper who complained of continuing to have problems with blurred vision.  She referred Cooper to the optometry department to evaluate his vision. *Id.* at 11.

On March 5, 2014, Plaintiff received an eye examination after having been hit in the face with a food tray, and it was noted that he had a corneal abrasion.  Plaintiff was prescribed Tobramycin[7] and was referred to an ophthalmologist. *Id.* at 13-16.

On May 15, 2014, Dr. Michael Summerfield, an ophthalmologist, examined Cooper.  Dr. Summerfield determined Cooper had mild cataracts and required eyeglasses.  No other eye problems were noted.  *Id.* at 16-18. On September 11, 2014, Dr. Summerfield examined Cooper, and noted Cooper was waiting to receive eyeglasses. *Id.*

During this period, Cooper also submitted correspondence and requests to the psychiatry department, complaining of mental health problems he allegedly suffers as a result of the use of force incident and was seen by mental health providers. ECF 25-5.  Notably, no mental health practitioners are named as defendants in this case.

The Medical Defendants have submitted two declarations supporting their motion for summary judgment. Ronald Weber, WCI Mental Health Professional Counselor Supervisor,

---

[7] Ophthalmic tobramycin is used in the eye to treat bacterial infections of the eye. Tobramycin works by killing bacteria. http://www.mayoclinic.org/drugs-supplements/tobramycin-ophthalmic-route/description/drg-20066406.

attests in his declaration that at no time was Cooper denied mental health services at WCI. ECF 26-6 ¶5.  Joe Ebbitt, Wexford's Director of Risk Management, HIPAA Compliance and Legal Affairs, attests Wexford was not involved in providing mental health treatment to Cooper. Wexford does not hold the mental health contract with Maryland's Department of Public Safety and Correctional Services, and does not employ the psychiatrists or psychologists who treat inmates at Maryland correctional institutions. ECF 26-7.

Cooper's claims concerning his mental health treatment at WCI and at North Branch Correctional Institution were examined in related cases *Cooper v. Brinegar, et al.* Civil Action No. JFM-13-3692 (D. Md.); *Cooper v. Sowers, et al.,* Civil Action No. JFM-13-3872 (D. Md). As noted, in these cases, Cooper's claims were dismissed or summary judgment was entered in favor of defendants. *See supra* note 1.

### A. Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences."." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

10

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a

diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition, refutes presence of doctor's subjective knowledge). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra,* 429 U.S. at 106).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by *Farmer,* 511 U.S. at 837; aff'd in pertinent part by *Sharpe v. S.C. Dep't of Corr.,* 621 Fed.Appx. 732 (Mem), (4th Cir. 2015). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).

Disagreement between an inmate and a medical provider about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1979) (per curiam) (A doctor's "failure to exercise sound professional judgment [does] not constitute deliberate indifference to serious medical needs.").

The record demonstrates that Cooper received medical treatment shortly after the October 22, 2013 incident, and his claim he was not permitted treatment for his physical injuries is refuted by the medical record. Nurse Martin observed a minor open area/abrasion at the top of

his head.  Cooper had no bleeding or swelling and denied loss of consciousness. Martin reported

Cooper's gait was within normal limits.  No other injuries were noted or reported. ECF 26-4 at 2-

3. Martin's declaration filed in a related action, directly refutes Cooper's allegation that unnamed

officers prevented Martin from treating Cooper's physical injuries and is consistent with the

medical record. *See supra* note 3.

Cooper was provided antibiotic drops for his eye one day after the use of pepper spray.

He was again examined the following day, October 24, 2013, for eye discomfort and an x-ray

was taken in response to his reports of rib pain. The x-ray results were negative.  Later that week,

a medical provider recommended reducing the frequency of the eye drops in response to

Cooper's complaints of burning in the eyes and blurry vision.  Cooper was seen on January 21,

2014, by an optometrist and seen again on March 5, 2014, for a corneal abrasion after he was hit

by a food tray in the face.  On September 11, 2014, an ophthalmologist examined Cooper, and

noted he needed eyeglasses.  ECF 26-4 at 2-19.

The verified exhibits demonstrate Cooper received ongoing treatment immediately after

the October 22, 2013 incident and in the days thereafter.  Further, his complaints of eye pain and

blurred vision were treated with antibiotic eye drops and the dosage was adjusted as appropriate.

Cooper was examined by both an optometrist and an ophthalmologist for his long-term

complaint of blurred vision and ordered eyeglasses.

The record does not support a finding that the Medical Defendants acted with deliberate

indifference to Cooper's medical needs following the use of force incident.  To the extent Cooper

disagrees with the type or frequency of care provided to him, such assertions fail to establish the

requisite deliberate indifference to support a claim of constitutional dimension.  In regard to his

claims of inadequate mental health care, none of the defendants named is a mental health provider.[8]

In light of the above, the court finds there is insufficient evidence on a claimed factual dispute to warrant submission of this claim to a jury for resolution. Absent a dispute concerning a genuine issue of material fact, summary judgment shall be entered in favor of the Medical Defendants as to this claim.

### A. Vicarious Liability

Cooper does not raise specific allegations against Wexford Health Sources, Inc.  Wexford argues Cooper's claim is that Wexford is liable for the actions of its employees under a theory of vicarious liability (respondeat superior), and there is no such liability under 42 U.S.C §1983.

The law in the Fourth Circuit is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983; *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Consequently, Wexford is entitled to summary judgment as a matter of law.

### CONCLUSION

For these reasons, summary judgment will be entered in favor of defendants as Cooper's Eighth Amendment claim the Medical Defendants acted with deliberate indifference to his serious needs. Cooper's tort and negligence claims will be dismissed without prejudice as this court declines to exercise supplemental jurisdiction over those claims. *See Carnegie Mellon*

---

[8]  Cooper's mental health claims were examined in *Cooper v. Sowers*, et al., Civil Action No. JFM-13-3872. *See* supra note 1.

*Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (dismissal without prejudice of state law claims appropriate where federal claim is dismissed early in the case).   A separate order follows.


_____                          _____
Date                                             J. Frederick Motz
                                                 United States District Judge


15